UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANNON L.,[1]

                                               Plaintiff,                      DECISION AND ORDER

-vs-

COMMISSIONER OF SOCIAL SECURITY,                    20-CV-1281 (CJS)

                                               Defendant.
_____

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Aug. 9, 2021, ECF No. 11; Def.'s Mot., Dec. 21, 2021, ECF No. 12.

Plaintiff presents three issues for the Court's review: (1) whether the Administrative Law Judge ("ALJ") erred in finding her migraines and psychiatric impairments to be non-severe; (2) whether the ALJ's determination that Plaintiff would only be off task 5% of the time was based on substantial evidence; and (3) whether the ALJ's RFC adequately reflected the limitations from the consultative medical examiner's "persuasive" medical opinion. Pl. Mem. of Law, Aug. 9, 2021, ECF No. 11-1. The Commissioner maintains that

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

the ALJ did not commit error, and that his decision was supported by substantial evidence. Def. Mem. of Law, Dec. 21, 2021, ECF No. 12-1.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 11] is denied, and the Commissioner's motion [ECF No. 12] is granted. The Clerk of Court is directed to close the case.

## BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff's Applications

Plaintiff filed her DIB and SSI applications in September 2017, alleging a disability onset date of July 1, 2010. Transcript ("Tr."), 284, Mar. 11, 2021, ECF No. 10. Plaintiff alleged that her ability to work was limited by several impairments, including: chronic depression, generalized anxiety disorder, obsessive compulsive disorder, fibromyalgia, chronic fatigue, postural orthostatic tachycardia syndrome ("POTS"), dysautonomia, and Hashimoto's thyroiditis. Tr. 212. In December 2017, the Commissioner determined that Plaintiff was not disabled, and did not qualify for DIB or SSI benefits. Tr. 98–103. Thereafter, Plaintiff requested a hearing before an ALJ. Tr. 106.

The Hearing before the ALJ

Plaintiff's request was approved, and Plaintiff appeared with counsel for a hearing before the ALJ via videoconference in September 2019, and an impartial vocational expert also joined by phone. Tr. 38. At the hearing, Plaintiff's counsel made an opening statement:

> [T]he case here . . . is obviously a . . . complex case, in terms of a variety of long-term testing and symptoms being reported . . . . [W]e have the migraines, and now menstrual migraines they've developed into. Myalgia. Fibromyalgia has been treated and assessed. Sinus tachycardia; postural orthostatic tachycardia syndrome ["POTS"]; major depressive disorder; obsessive-compulsive disorder ["OCD"]; panic disorder. And more recently, they finally have confirmed, through testing in 2019, assessed the mitochondrial disorder. That, likely, is a disorder that may be accounting for a lot of the symptoms that we're seeing . . . since her 2010 onset date.
>
> * * *
>
> . . . . [T]he initial determination found that psychiatric impairments were non-severe . . . . I would certainly disagree . . . . We have a long history, since 2007, of not only complaints, but findings of anxiety, and a lot of difficulty with agoraphobia symptoms. Difficulty with the OCD, during that time, certainly has continued. But I would argue that those impairments have certainly impair[ed] her ability to leave her home; take care of her personal hygiene and care; and certainly, lasted more than 12 months.
>
> * * *
>
> And treatment has helped, to some degree, but not to a degree where she's been able to achieve the control over the fatigue and the pain symptoms that she's having, and those have greatly interfered with her ability to return to school or any job, on a full-time, sustained basis.

Tr. 40–41.

For her part, Plaintiff testified that she was 35 years of age and still lived with her mother and father. Tr. 43. She had completed "a couple of years of college," and "spent eight years in and out of [Erie Community College], trying to complete [her] degree," but had to withdraw from her classes due to anxiety attacks, "OCD germaphobia type issues," and extreme fatigue. Tr. 45–46. Plaintiff stated that she had not worked in ten years, when she was a pharmacy technician for six months, and then a receptionist for a veterinary clinic for a few months. Tr. 43–45. She was unable to continue in either job due to fatigue (Tr. 49), and testified that she was still prevented from working full-time due to fatigue,

3

body pain, body weakness, muscle spasms, and her mental health issues (Tr. 44–45).

With respect to her activities of daily living, Plaintiff testified that on a good day, she wakes up around noon, eats, and does some light activity. Tr. 53. She stated that if she is having "a fantastic day," which she has maybe a couple of times each month, she might go for a walk around the block for up to 45 minutes. Tr. 53, 56. On the worst days, she will sleep until 5:00 or 6:00 in the evening. Tr. 54. She plays volleyball once each week for 45 minutes (Tr. 53) and helps her mother care for her father[2] (Tr. 50), but she does not prepare meals for herself because she does not like to be around raw foods with her OCD condition. Tr. 51–52. Her personal hygiene is "still not what normal standards would be," in that she is sometimes too tired to bathe or even brush her teeth, and does not keep her room or her car clean. Tr. 58. Plaintiff also stated she experiences migraines about four days a month, which includes both a headache and feeling ill. Tr. 54–55.

<u>The ALJ's Decision</u>

On November 5, 2019, the ALJ denied Plaintiff's claim for DIB benefits. Tr. 29. In his decision, the ALJ found that Plaintiff met the special insured status requirements for DIB benefits through December 31, 2015. Tr. 18. At step one of the Commissioner's "five-step, sequential evaluation process,"[3] the ALJ found that Plaintiff has not engaged in

---

[2] Plaintiff's disability report indicates that her Father is disabled with "end-stage MS", and that when she can she assists with feeding, giving medication, getting her father cleaned up, getting him into and out of his bed and wheelchair, and taking him to doctor appointments. Tr. 228.

[3] Claimants must meet the insured status requirements of the Social Security act to be eligible for DIB benefits. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130. In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of

substantial gainful activity since his amended alleged onset date of July 1, 2010. Tr. 18. At step two, the ALJ determined that Plaintiff has several severe impairments: asthma, obesity, and POTS with fatigue. Tr. 112. The ALJ also noted that there was objective evidence in the medical record of left ear otitis externa, sleep disorder, fibromyalgia, migraines, gastroesophageal reflux disease, thyroiditis, sleep apnea, benign paroxysmal vertigo, and mitochondrial myopathy, all of which the ALJ found to be non-severe. Tr. 18.

In addition, the ALJ found that Plaintiff's medically determinable mental impairments of major depressive disorder, obsessive compulsive disorder, generalized anxiety disorder, and panic disorder, considered singly and in combination, were non-severe because they do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. Tr. 18. To make this finding, the ALJ performed the "special technique" required under 20 C.F.R. § 404.1520a for all mental impairments.[4]

---

    Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

[4] When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must evaluate the claimant using "Paragraph A" criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3).

He found that Plaintiff had no limitations in understanding, remembering or applying information, or in concentrating, persisting, or maintaining pace. Tr. 19. He found that she had a mild limitation in interacting with others, and in adapting or managing herself. Tr. 19–20.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21. Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[5] ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following limitations:

> [Plaintiff can] occasionally kneel, crouch, stoop, balance, and crawl, and can occasionally climb stairs and ramps. The claimant can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. The claimant can have occasional exposure to dust, mists, gases, noxious odors, fumes, pulmonary irritants, and poor ventilation. The claimant can tolerate occasional exposure to extreme cold and vibration. The claimant can never be exposed to strobe lights, to flashing lights or bright lights, such as those found on a theatre stage. The claimant requires a moderate noise work environment as defined in the DOT and SCO. In addition, the claimant is able to understand, carry-out, and remember simple instructions, and make simple work related decisions. The claimant cannot perform work requiring a specific production rate, such as assembly line work. The claimant will be off task 5% of the workday.

Tr. 21.

---

The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation resulting from the claimant's mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d).

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 27. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found that Plaintiff would be able to perform such jobs in the national economy as a router, office helper, and ticket seller. Tr. 27–28. Hence, the ALJ concluded that Plaintiff *is not* disabled. Tr. 28.

On July 27, 2020, the Commissioner's Appeals Council denied Plaintiff's request to review the ALJ's decision. The ALJ's decision thus became the "final decision" of the Commissioner.

## LEGAL STANDARD

42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence

having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

## DISCUSSION

As indicated above, in the present case Plaintiff raises three arguments for review by the Court. First, Plaintiff argues that the ALJ erred in his findings regarding her migraines and psychiatric impairments at step two of the five-step sequential evaluation process. Second, Plaintiff suggests that the ALJ's findings that she would only be "off-

task" in any job for 5% of the workday was not based on substantial evidence. Finally, Plaintiff contends that the ALJ's RFC does not adequately reflect the limitations suggested by the consultative examiner's medical opinion. After a thorough review of the record and the papers submitted in this matter, the Court agrees with the Commissioner that the ALJ did not err, and that the decision was supported by substantial evidence.

<u>The ALJ's Step Two Finding</u>

At step two of the five step analysis, the ALJ found that Plaintiff's major depressive disorder, her OCD, her generalized anxiety disorder, and her panic disorder "do not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities and are therefore nonsevere." Tr. 18. With respect to Plaintiff's migraine headaches, the ALJ found that "the medical evidence establishes that [Plaintiff] has only a slight abnormality that has no more than a minimal effect on her ability to perform basic work activities." Tr. 18. Plaintiff argues that this assessment and analysis "is a gross mischaracterization and understatement of the impact these impairments cause on Plaintiff," which led the ALJ "to improperly exclude limitations such as absenteeism, social interaction and fatigue issues" that impair Plaintiff's ability to work. Pl. Mem. of Law at 19.

*Legal Principles*

20 C.F.R. § 404.1520(a)(4)(ii) and § 416.920(a)(4)(ii) provide that at the second step of the ALJ's sequential evaluation process, the ALJ must examine the evidence to determine whether the claimant has a "severe impairment." An impairment, or combination of impairments, is severe if it "significantly limits" the claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). The Second Circuit has stated that: "the standard for a finding of severity under Step Two of the sequential

analysis is *de minimis* and is intended to screen out the very weakest of cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Nevertheless, the burden is on the claimant to provide sufficient evidence to demonstrate to the ALJ that a severe impairment exists. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (stating the Commissioner "has express statutory authority to place the burden of showing a medically determinable impairment on the claimant"). Moreover, an ALJ's failure to identify a severe impairment at Step Two is harmless where he considers the impairment at subsequent steps of the five-step evaluation process. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir.2010)).

*Application*

In the present case, regardless of whether the ALJ classified Plaintiff's migraines and psychological impairments as severe or non-severe at Step Two, it is clear from both the RFC and the discussion of the evidence in the decision that the ALJ gave the impairments significant consideration. For instance, in the RFC finding itself, the ALJ determined that Plaintiff "can never be exposed to strobe lights, flashing lights or bright lights . . . [and] requires a moderate noise work environment . . . ." Tr. 22. Additionally, the ALJ found that Plaintiff is only "able to understand, carry-out, and remember simple instructions, and make simple work-related decisions . . . . [and] cannot perform work requiring a specific production rate . . . ." Tr. 22, 25. These limitations refer to Plaintiff's migraines and psychiatric impairments, respectively.

Further, the ALJ supported these limitations in his discussion of the evidence. For example, the ALJ's discussion of the objective evidence included a reference to a report

by Plaintiff's treating neurologist, Dr. Alexander Rovner, that Plaintiff's migraine symptoms "would occur 'out of the blue.'" Tr. 24. The ALJ also specifically considered the opinion of state agency psychiatric consultant T. Bruni, Ph.D., who found that "the claimant had mild limitations interacting with others and adapting or managing herself, but that she retained the capacity to engage in gainful activity . . . [because] her mental impairments did not appear to cause significant disruption to her overall ability to function on a daily basis." Tr. 26. He also considered the opinion of consultative psychological examiner David Schaich, Psy.D., who "provided that [Plaintiff] was mildly limited in the ability to use reason and judgment, to interact with others, to sustain concentration, pace, ordinary routine, and attendance, and to regulate emotions, control behavior, and maintain well-being." Tr. 26.

The ALJ found both medical opinions to be "persuasive and consistent with the medical evidence in this case," and cited to several pages in the record which supported the ALJ's statement that Plaintiff was "generally described as having good judgment and insight, no harmful intentions, improving or intact concentration and attention, and improved ability to tolerate her OCD." Tr. 26–27 (citing, *inter alia*, treatment records from treating psychiatrist Dr. Christopher Martin, M.D. and treating therapist Bernadette McCourt, Ph.D. at Tr. 447, 457, 473, 489, 503, 519, 535, 539, 838, 848, 856, 870).

Therefore, even assuming – without finding – that the ALJ erred by finding at Step Two that Plaintiff's migraine and psychological impairments were non-severe, the error would be harmless because the ALJ expressly considered the impairments in subsequent steps of his evaluation, included relevant limitations in his RFC findings, and supported those limitations with substantial evidence. *See, e.g., Reices-Colon*, 523 F. App'x at 798.

11

The ALJ's RFC Determination: Plaintiff's Time Off-Task

At Plaintiff's hearing before the ALJ, the ALJ posed three hypotheticals to the impartial VE to discern what work Plaintiff may be capable of. *See* Tr. 65–68. In his first hypothetical, the ALJ posed a number of limitations that he ultimately adopted in his RFC, and indicated that "[t]he individual will be off task [5%] of the workday." Tr. 65. The VE responded that the individual would be able to work as a router, office helper, and ticket seller. Tr. 66. In his third hypothetical, the ALJ indicated the same limitations as proposed in the first hypothetical, with the exception that the individual would be off task 20% of the workday. Tr. 67. This time, the VE indicated that 20% would be work preclusive. Tr. 67. The VE further stated that 10% is the threshold level of time off task that an employer would tolerate. Tr. 68.

In his RFC determination, the ALJ found that Plaintiff would be off task 5% of the workday. Tr. 22. Plaintiff maintains that "[t]he ALJ's assessment of off task time is arbitrary and not shown to be based on any medical evidence, opinion or testimony which offers clear evidence Plaintiff would only be off task 5% and not a greater amount." Pl. Mem. of Law at 24.

*Legal Principles*

20 C.F.R. § 404.1546 and § 416.946 provide that the determination of a claimant's RFC is an issue reserved to the Commissioner. *See also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (discussing 20 C.F.R. § 404.1527(d)(2)). In making the RFC determination, the Second Circuit has consistently warned ALJs not to "arbitrarily substitute [their] own judgment for competent medical opinion." *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (quoting *McBrayer v. Secretary of Health and Human*

*Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). However, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (affirming what had originally been held summarily in *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (an ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole")).

*Application*

In the present case, neither state agency medical consultant J. Poss, M.D., nor consultative medical examiner Trevor Litchmore, M.D. opined that Plaintiff would be off task for any percentage of the workday, and Dr. Poss opined that the medical evidence did not even indicate any exertional limitations. *See* Tr. 92–94. Further, neither state agency psychological consultant T. Bruni, Ph.D. nor consultative psychological examiner David Schaich, Psy.D. opined that Plaintiff would be off task for any part of the workday, either. Indeed, Plaintiff failed to provide any medical opinion evidence suggesting that she would be off task at all. Rather, it appears the ALJ credited to some extent Plaintiff's testimony that her fatigue and OCD-induced panic led to her inability to focus or stay awake at work. Tr. 23. In other words, despite the absence of medical opinion evidence, the ALJ seems to have given Plaintiff the benefit of the doubt, associating her 5% off-task limitation with the medical evidence of Plaintiff's POTS and fatigue impairments. Tr. 24.

The ALJ's conclusion that Plaintiff was limited in this respect was supported by substantial record evidence. For instance, Dr. McCourt's treatment notes in September

2018 indicated that "Plaintiff increased her dose of Provigil with excellent effect. She now has the energy to engage in daily activities and social functions." Tr. 24 (citing, *inter alia*, Tr. 838). However, Plaintiff's treating neurologist, Dr. Rovner, noted in January 2019 that although Plaintiff's migraines have gotten less severe and less frequent, she still has generalized fatigue and tiredness. Tr. 614–16. The fact that the ALJ assigned a particular percentage range to illustrate Plaintiff's limitations does not undermine the fact that the limitation was supported by substantial evidence. *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (finding *Cosnyka v. Colvin*, 576 F. App'x 43 (2d Cir. 2014) and *Mariani v. Colvin*, 567 F. App'x 8 (2d Cir. 2014) to be inapt where the ALJ's highly specific findings were supported by the record). "The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand." *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp.3d 639, 649 (W.D.N.Y. 2020) (citation omitted). Accordingly, the Court finds Plaintiff's argument to be without merit.

<u>The ALJ's RFC Determination: Reflection of Persuasive Medical Opinions</u>

In November 2017, consultative medical examiner Dr. Litchmore examined Plaintiff and issued a medical source statement. Tr. 550. Dr. Litchmore stated that Plaintiff "will have limitations as it relates to exposure to respiratory irritants in the context of her asthma . . . . [and] marked limitations in terms of activities that require moderate to marked physical exertion in the context of her [POTS], and that will include unprotected and operating moving machinery parts." Tr. 550. In his decision denying benefits, the ALJ found Dr. Litchmore's opinion to be "persuasive and consistent with the medical evidence in this case." Tr. 25. On review, Plaintiff finds it "very perplexing how the ALJ interpreted Dr. Litchmore's opinion to equate to a light level RFC given [that] Dr. Litchmore found

Plaintiff would have 'marked' limitations for most physical exertional activity," and argues that remand "is plainly warranted" to correct the error. Pl. Mem. of Law at 29.

*Legal Principles*

Under the Commissioner's regulations, the ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In general, the claimant has the burden to provide the evidence for the ALJ to use to make an RFC determination. *Id.* As indicated above, the Second Circuit has consistently warned ALJs not to "arbitrarily substitute [their] own judgment for competent medical opinion." *Riccobono*, 796 F. App'x at 50 (2d Cir. 2020) (quoting *McBrayer*, 712 F.2d at 799). However, a medical opinion providing the specific restrictions reflected in the ALJ's RFC determination is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). 20 C.F.R. § 404.1527(d)(2) makes clear that the claimant's RFC is an issue reserved to the Commissioner, and it is well-settled that it is "within the province of the ALJ to resolve" conflicting findings in the record. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

*Application*

The Court disagrees with Plaintiff's statement that "the ALJ clearly pitted his own lay assessment against that of professional medical assessment . . . ." Pl. Mem. of Law at 29. Plaintiff specifically challenges the ALJ's treatment of Plaintiff's POTS diagnosis, and maintains that given the complexity of the diagnosis, he could not properly evaluate the functional impact using his lay judgment alone. Pl. Mem. of Law at 29. A careful

15

reading of the ALJ's decision reveals that the ALJ's RFC determination is not, in fact, based on his own assessment, but rather on substantial objective and opinion evidence in the record.

As discussed above, the ALJ considered both medical opinions that were in the record regarding Plaintiff's physical limitations. The ALJ considered consultative examiner Dr. Litchmore's opinion that claimant would have limitations related to respiratory irritants due to her asthma, and marked limitations to activities that require moderate to marked physical exertion due to her POTS. The ALJ found this opinion persuasive and consistent with the medical evidence, and cited specifically to supporting treatment records from Plaintiff's primary care provider (Tr. 291, 759, 900), treating psychiatrist (Tr. 487), treating neurologist (Tr. 615, 992), and a second primary care provider (Tr. 1029). The ALJ also considered state agency medical consultant J. Poss, M.D.'s opinion that there was insufficient evidence to support a finding of any severe impairment for DIB benefits, and that claimant did not present with any exertional restrictions for the SSI benefits. Tr. 25. The ALJ found Dr. Poss's opinion only "somewhat persuasive and consistent with the medical evidence," because the ALJ noted that the medical records showed that Plaintiff exhibited additional symptoms of tachycardia, lightheadedness and syncope that warrant a limitation to the "light" level of exertional work.

In short, the ALJ weighed the evidence available – including both medical opinions – and made an RFC finding that was both supported by substantial evidence, and consistent with the record as a whole. *See, e.g., Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 11] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 12] is granted. The Clerk is directed to close this case.

DATED:   August 25, 2022
         Rochester, New York

_____
CHARLES J. SIRAGUSA
United States District Judge